Good afternoon, Illinois Appellate Court, First District Court is now in session. The Fifth Division, the Honorable Justice Thomas Hoffman presiding. Case number 2-0-0561, Brian Lopez versus State of Illinois Board of Elections. All right, gentlemen, the time we've allotted for oral argument is 15 minutes for the appellant, 15 minutes for the appellee, and the appellant will get five minutes in rebuttal. Mr. Mondragon, you can begin when you're ready. Thank you, your honors. May it please the court, my name is Adolfo Mondragon, but Mondragon is fine. Attorney of record for the petitioner appellant, Mr. Byron Sischko-Lopez. Campaign funds for non-personal campaign-related expenses is the basic principle underpinning the letter and spirit of the Campaign Disclosure Act of the Illinois Election Code. Indeed, as a threshold matter, the Campaign Disclosure Act requires that all uses of campaign funds meet the definition of an expenditure as defined in Section 9-1.5 of the Act. That is to say that the campaign funds must be used in quote, in connection with the nomination for election, election or retention of any person to or in public office. Now there are many kinds of expenditures that candidates regularly make during a campaign for public office. Among those expenditures are legal fees for such things as preparing, filing, defending candidacy papers, filing objections to a rival's candidacy papers, conducting a recount or an election contest, and there are a few other electoral process matters that an attorney can help a candidate during the campaign. But despite the fact that the Board has had a blanket policy of allowing the use of campaign funds for payment of legal fees in general, not all legal fees are campaign-related costs or expenses. So the central issue before the Court today is whether the use of campaign funds to pay for a candidate or public official's criminal defense is as a matter of law an expenditure as defined by the Act. Can I ask you a question before you go too far? You say payment of campaign funds for criminal defense. Is it your contention that the payment of campaign funds for any criminal defense is prohibited by the Act? That's right, which is why I pose the question as a kill your campaign manager in a heated campaign discussion or allegations of corruption while in office. Whatever the criminal behavior is, if you are paying legal fees for your criminal defense, whatever the allegation may be from your campaign funds, we believe that that use of campaign funds does not meet the definition of an expenditure. In this case, the hearing officer found that the committee's use of $220,000 of campaign money to pay legal fees owed for defending former Alderman Daniel Solis from federal allegations of corruption was an expenditure because, quote, if Mr. Solis was convicted, he would no longer be able to run for certain local offices and it could impact his chances of being elected in the future. The flaw with that logic is as follows. The fact that not being able to run for office is an incidental consequence of a criminal conviction does not make the payment of those legal fees for criminal defense a matter connected to the process of running for office. Just as the fact that not being able to run for office is an incidental consequence of, for example, being sick with a serious illness doesn't make the payment of those medical bills for treatment a matter connected to the process of running for office, or the fact that not being able to run for office is an incidental consequence of owing the government parking tickets or being indebted to credit cards doesn't make the payment of those debts a matter connected to the process. Your opponent is going to get on and suggest to us that there is no definition in the statute of personal debts and that we should adopt the federal rule of the irrespective test. And under that test, if the criminal fees are being paid for a matter that relates to his position as a government official, then in that particular case, it's a proper expenditure and the debt is not personal. Now, you make some comments in your brief that I have difficulty with. You seem to suggest that it's an improper expenditure because it was paid after he decided that he wasn't going to run for office again, or at least not run for alderman. But it occurs to me that the proper date to be looked at is not the date the bill is paid. The proper date to be looked at is the date the bill is incurred. And in this particular case, there is no evidence relating to when these legal bills were incurred. The only thing that is in there is you make the allegation that the bills were paid for allegations of public corruption. Now, you can't very well be public corruption unless you're public official. So that goes to the second argument, Your Honor, in terms of the board's application of the facts in this case, to the hearing officers interpretation of the annotation of legal fees for criminal offense in this case, because they may affect Mr. Solis's future runs for office. In terms of that application of the facts. Mr. Mondragon, just bear with me for a minute, this hypothetical. If Mr. Solis felt that the allegations that were leveled against him were untrue and were such that they would preclude him from running for office again, would that be a proper use of his campaign funds to defend himself? Notwithstanding that he later decided, I'm not talking about what decided to do later. If at the time the allegations were leveled, he felt, if these are untrue, and I'm going to fight these because they will keep me from running for this office again, and I plan to run again, would that be a proper use of his campaign funds?  I'm sorry, Your Honor, you're going to have to repeat that. You broke up. Did you hear the question? I think I got the gist of the hypothetical. I gave you a little hypothetical. If he was going to try to vindicate himself during, for example, while he was sitting in office, I think is the gist of the question. And in terms of the definition of expenditure and its connection to running for office, I don't think that the fact that Mr. Solis trying to vindicate himself so that he could have a future run would meet the definition of an expenditure in that the fact that it's an incidental consequence of being charged with a criminal matter doesn't make fighting these matter. The municipal code prohibits anyone who is convicted of a felony from serving in municipal office, and that would include aldermen of the city of Chicago. Now, if these bills were incurred while he was sitting as an alderman for offenses that are alleged to have been committed while he was an alderman, then it occurs to me this is not merely incidental. This is not like getting arrested for drunk driving. It's incidental, Your Honor, in the fact that the main consequence of any criminal conviction is your freedom, not necessarily your ability to run for office. That just happens to be something that it prohibits Mr. Solis, but anyone else in that position, the main and including Mr. Solis, the main consequence of a criminal conviction is his inability to be free, not the concern of a is in his ability to run for office in the future. Mr. Mondragon, it doesn't have to be his primary concern. But Mr. Mondragon, most people, but most people who are charged with crimes don't with money in it. If you are a public official and you are charged with something that would preclude you from running in the future, are you saying that depending on when you make the decision as to when you're going to run again, that that determines whether you can use the money? It sounds to me like that's what you're saying. And I don't know. I think that that's the third argument and the alternative that if in this case, we accept the definition of a hearing officer, my position is that it should never be allowed as a matter of law for uses of campaign funds should never be allowed to pay for legal fees to defend any criminal allegation, whether it's public corruption or battery or mayhem or anything else, because criminal conduct is not part and parcel of the process of running for office. Those things are personal matters that happen to someone in their personal life. Those things aren't part of, as the as the code says, in connection with the nomination for election, election or retention of that person. These are not public. Mr. Mondragon, if you're charged with public corruption, as Justice Hoffman said, you have to be a public official. I mean, if you're that works for UPS, you're not going to be charged with the same kind of crime that an alderman would be charged with. So I don't I think we're mixing apples and oranges here. Well, I would also add that if we allow this to occur, that we're also setting in terms of public policy, we're giving politicians an incentive to push the envelope of bad behavior in office because they will have this false sense of safety that they know that they could always dip into their campaign funds to finance a top tier legal defense to any jam that they ever get into. And so we allow this to happen. Mr. Mondragon, the federal system doesn't seem to be troubled by that with the application of the irrespective test, which is what your opponent is going to tell us we should adopt to make a determination as to whether this was a personal debt or not. Now, I take it that both of you disagree with the hearing officer when he suggests that the statute should be interpreted only to relate to personal loans from your briefs. You both appear to agree that it prohibits personal debts, not personal loans only. Am I correct in that assumption from both of you? Yes, your honor. In terms of our position, is it that it's personal debts that but beyond just personal loans? Right. So now the question becomes, why shouldn't we adopt the irrespective test in order to determine what is or is not a personal debt vis-a-vis the expenditure of funds for legal fees? Well, one, I would say that to the extent that the standard of review owes some deference to the board, I think that in this matter, the board declined the invitation to adopt the federal test. And I think there's good reason behind it. The legislature, in its wisdom, established this two-tier analysis for use of campaign funds. First, as a threshold matter, they demand that it meets the definition of an expenditure. And then beyond that, if it is an expenditure and it has an aspect of it that is too personal, the legislature enumerated 11 specific type of expenditures that were prohibited. So it's a very ingenious system in that it doesn't need to enumerate everything under the sun, but it has a two-level tier of analysis. And we don't need the federal system or the federal way of doing it because the legislature already built in this two-step analysis to every use. If your argument was correct, shouldn't the legislature have prohibited the payment of legal fees? No, because what I'm saying is that the definition of expenditure acts as a threshold that weeds out the majority of ineligible uses of campaign funds. And then if something is an expenditure, but is still yet regarded as too personal, like a membership to a gym club or a haircut or the of clothing, which can be related to a campaign, the legislature then said, but we're going to further weed these out by enumerating these 11 things, including personal debt. If I may ask, counsel, your first argument is that the legal fees does not meet the definition of an expenditure under the act. And you're referring to section 9.15A, is that correct? That is correct, your honor. And so is it your argument that the plain language of that section prohibits legal fees for criminal cases to not be included as an expenditure? That is correct. If we just stick to the plain language of the text, if we look at the language of 9.15 as a threshold matter, that all uses have to first meet the definition of an expenditure. I believe that legal fees as a whole, you cannot ban because there are some legal fees that are permissible. Like I said, to help somebody get on the ballot or to knock someone off the ballot, et cetera. But not all legal fees are connected to the campaign process. And paying legal fees for a criminal defense, whether it's public corruption or any other matter under the criminal code, doesn't make the defense of those allegations a part and parcel matter that's section 9-1.5A definition of expenditure. How does that relate to defense reliance on the language in 910.8C, which again kind of seems to define expenditures and say that nothing prohibits expenditures to defray customary and reasonable expenses of an officeholder in connection with performance of governmental and public service? Well, to that point, I think even one of the board members, if I recall correctly, at the hearing kind of took umbrage at the fact that Daniel Solis would consider this one of these normal expenditures in public office. So I would not be the only one to think that there is no... Paying an attorney for counsel against federal allegations or because they're cooperating with a federal corruption investigation isn't something that a public official regularly does or regularly needs to qualify for that subsection. And so the suggestion that this is something that a public official regularly defrays or is a regular expense, I would say is a little beyond belief. Mr. Mondragon, your time is up. We'll give you five minutes on rebuttal. Thank you, Your Honor. Thank you, Your Honor. May it please the court. My name is Michael Dorff. I represent the 25th Ward Regular Democratic Organization. Of all the agencies in state government, only two agencies are created by the Illinois Constitution and not by statute. One is the Illinois Board of Education. The other is the Illinois Board of Elections. And the Board of Elections, by the words of the Constitution, is given general supervision over the administration of the election laws throughout the state. And in the election code, in the statement about how members are selected, they state that members of the board must be persons who have extensive knowledge of the election laws of the state. Well, Mr. Dorff, let's just get to the issues. We know that it's an administrative agency. We know we apply the Administrative Review Act, and we know that we must find that their findings of fact are prima facie correct. But let's get to the issue. Is this a personal debt, yes or no? And if not, why not? It is not a personal debt, Your Honor. And that's why I want to make clear about the Electoral Board. They voted eight to nothing on this, twice. And they weren't happy about it. And some of the members weren't happy about Mr. Solis either. But what they recognize is that the election code lists 11 very specific prohibitions against the use of campaign funds, and that legal expenses wasn't in it. And in fact, they directed the appellant to look to the General Assembly for his remedy. And in fact, they mentioned that at the to add legal defense of a criminal activity as a prohibition. There was a general recognition by the Election Board that it is not prohibited. Mr. Dorff, you wouldn't contend that the payment of legal fees for driving under the influence of alcohol is anything other than a personal debt that should not be paid by a campaign committee, would you? Right. That's absolutely right, Your Honor. And as you predicted, I am recommending that if this court decides to look at the Election Board's application of the facts to the election code, which has no restriction against legal expenses, that they use the irrespective test that was created by the Federal Election Commission and affirmed by the federal courts. Because that is the only way to with respect to an elected official, whether the expenditure that they made was really related to their activities as a public official or a candidate. And I would like to talk a little bit about appellant's definitions of both expenditure and debt, because the appellant goes into a great deal about that. And I think the Electoral Board was absolutely right in stating that this is a proper expenditure. If you take appellant's definition of expenditure, then there's no reason for us to be here. Because if there was not an expenditure, then how can the board in 10.8.10b make fines for expenditures that are not under the code? It's either an expenditure or it doesn't exist. So I really think this is a red herring. It has nothing to do with this. This is an expenditure. The question about debt is a very that we think the Electoral Board was a little too narrow in saying that it only responds to personal loans. But the definition of debt, which the appellant doesn't is in their brief, which is it's any sum of money that you owe someone. If you accept that definition, then if a volunteer buys 10 pizzas for a petition gathering event, and the committee repays it, it's an illegal debt because there was not a loan. There was not a written instrument. There was not interest. At the same time, that same section of debt says that a committee can make a repayment if it is under a credit agreement, which is when committees had credit cards when this was first written. So this would mean under the appellant's definition of debt, that if the 25th Ward Regular Organization had paid Foley and Lardner with a credit card instead of with a check, that would have been under a credit agreement, and that would have been acceptable. And I think both of those definitions that that appellant is giving are clearly irrational. And I think you do have to look at debt as something which does not relate to the payment of legal expenses, but does relate closer to things which are entirely personal. Now, I would know we did talk, I've talked a lot about in my brief, in my other argument, about Espresso Unius. And I wish my Dorothy Sparks, my high school Latin teacher from Roosevelt High School in Albany Park, were here to see us in this forum discussing the meaning of a Latin legal maxim. But it's a real one, and it's one that the Supreme Court of Illinois has adopted. If the legislature knows what it's doing, and if the legislature writes 11 separate prohibitions, then under the maxim of Espresso Unius, if that prohibition is not there, then it is not a prohibition. And I think this is a, and I think on that basis alone, this case could be decided. This is a case where the appellant is asking this court to write words into a statute which don't exist. But Mr. Dorff, I don't think you can take the position that merely because legal fees are not listed in the statute, that all legal fees are proper expenditures, any more than you could take the position, we'll use your pizza example. I don't think that a a committee could use their, their, their funds to pay for pizza for a Girl Scout troop that his daughter may have belonged to. So I mean, there has to be something more than merely it doesn't say legal fees, and therefore all legal fees are proper. Yes, Your Honor, and I agree, and that's why, and all the other maxims of statutory interpretation say, you've got to apply some common sense and not come to a result which is irrational. And when you look at the legislative history of this section, it was very clear that they said, this section is made so that you don't use campaign funds for personal use. And I think that is an absolutely correct interpretation. And the question does become what, what, what is what is personal use. And I think, again, that the irrespective test is, is in this situation is the only one which makes which makes any sense. Now, I do want to make sure that I get one one other point across before my time is up. And I got five minutes. Oh, great. Then I can I can talk for Thank you. Thank you, sir. If if this court does decide that legal fees are prohibited in this situation, with respect to in connection with the candidates, officeholders involvement with the criminal investigation, I think it is it is essential that the application be prospective only. And section nine dash 8.10 b talks about how fines can be made on people who knowingly violate this section. And we have scores of political committees, which for years have been looking at this statute, seeing no prohibition against legal fees. Plus, as the appellant has stated in his brief, the Board of Elections has had a policy for years, saying that legal fees are an appropriate expenditure of campaign funds. So the statement says you have to knowingly violate the section. And I don't understand how a committee can knowingly violate a section when the State Board of Elections has, again, for years, put its imprimatur on this use of funds. And that, I believe, would be entirely unfair. And again, I want to back up for a minute to the irrespective test. Your opponent says that the board refused to adopt the irrespective test, but the board made a very, very interesting finding by adopting the hearing officer's report. It said money spent on legal fees, such as in this case, can have a political annotation to them, which seems to mean that legal fees can be a proper expenditure, having a political annotation. And then they went on to say money spent on defense, as presented in this case, can be an acceptable use of campaign funds. Now, the money spent on legal fees in this case, according to your opponent, in their complaint, was money spent in defense of allegations of political corruption. Now, you can't be guilty of political corruption unless you're a public official. So now the question becomes, did they actually adopt an irrespective test? Well, they didn't say they do, but I think certainly they use that reasoning. And I want to make just as clear one point. I represent the 25th Ward Regular Democratic Organization. I do not represent Mr. Solis. But Mr. Solis has never been indicted of anything. He has never been indicted. Again, the only public document that was available at the time we did these briefs was the indictment of Alderman Burke, which specifically said that Alderman Solis was acting at the direction of the Federal Bureau of Investigation and the Department of Justice. So I would just like to be sure we're clear about that. This was, as I understand, and I think the only thing that I've been told by the other counsel for Mr. Solis, is that Foley and Lardner was hired at the time the FBI asked him to wear a wire and all legal that he wore a wire gratuitously, do you? What I do suggest, Your Honor, is that anyone who's approached by the FBI, the very first thing they should do is call the lawyer. And if it relates to their public activities, it is an appropriate expense of their political committee. You got about a minute. All right. Well, I think I'll give back the balance of my time, Your Honor. Okay. Mr. Mondragon. Just a few points, Your Honor. In terms of whether or not this use can be categorized as a personal debt, I think, well, it's clearly not a public debt. It's not a business debt. And it must be a personal debt because the services used were for the direct satisfaction of Mr. Solis' legal defense needs. And as you said, Your Honor, if this was another allegation of DUI or anything else, how could it not be viewed as a personal debt? And as any attorney worth his salt would know, that when you're asking a client to pay their legal fees, you have to be very careful in how you word those letters because there are consumer laws, including the federal DCPA, for example, the Federal Debt Collections Practice Act that categorizes legal fees as these personal debts. And so any attorney out there knows that even when they're requesting the balance owed, they have to be very careful on how they word their letters because there could be ramifications because they're going after a personal debt. And in terms of the expressio unius argument, I think that the argument sounds very lofty. And I love canons of construction, too. I love that class at the UFC. It was a great class to take. But here, the misstep of the argument of the logic is that begins with a faulty premise. It assumes that all legal fees are expenditures as defined by the Act. And therefore, if it's not enumerated in one of the 11 prohibitions, that therefore the legislature meant to exclude them from that prohibition. But the wording of that section of 8.10a says that the following expenditures are prohibited, which implies that it must be an expenditure before it can be considered one of the 11 things that are prohibited. So therefore, as a threshold matter, this Act always requires that whatever the use of campaign funds is, that it first must meet an expenditure. And this expressio unius argument starts on that faulty premise that all legal fees are expenditures. But you're asking us, first of all, to find as a matter of law that all criminal legal fees are not proper expenditures. So if that was the case, shouldn't it be included in that list? No, because if you think about it, the legal fees that pertain are connected to the nomination, election and retention to office. It's a very niche practice. There are a very small amount of things that attorneys do for candidates in the process of running for office or retaining office. Mr. Mondragon, if what you say is true, it's so narrow, wouldn't that be an easy thing for the legislature to fix? And isn't this something that they should be fixing? Seems to me like you're asking a court to do a legislative fix. I would respectfully disagree, Your Honor. I think that the ingenuity of this act is that in its language, it establishes a two-prong analysis. The first one being that it must meet an expenditure to weed out whatever things are clearly not related to the process of running for office. And then there are very specific cases of expenditures that are still characterized in a personal matter that the legislature then said, you know, these are expenditures, but there's still some tact of personal purpose here, and we're going to weed those out by then enumerating 11 more. And so I don't think that I'm asking this court to legislate. The legislature has already ingeniously, already made in the language of this act, a two-prong analysis to weed out as a threshold, most of the things that are not connected to running for office, and then analyzing those things that are expenditures, but still have that connection to a personal purpose that is not acceptable, and weeding those out in the 11 numerations. And if there are no further questions, Your Honor, I would rest. None for me. Counsels, thank you very much. The matter will be taken under advisement and a decision will be issued in due course. Thank you very much.